The STATE ex rel. WHITT

v.

AMD FABRICATORS, INC. et al.

[Cite as *State ex rel. Whitt v. AMD Fabricators, Inc.,* 169 Ohio App.3d 450, 2006-Ohio-4366.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–690.

Decided Aug. 24, 2006.

Dworken & Bernstein Co., L.P.A., and Jonathan T. Stender, for relator.

Jim Petro, Attorney General, and Charissa D. Payer, Assistant Attorney General, for respondent Industrial Commission of Ohio.

McGRATH, Judge.

{¶ 1} Relator, Lawrence Whitt, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission

of Ohio to amend the start date for its award of temporary total disability ("TTD") compensation.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate, who issued a decision, including findings of fact and conclusions of law (attached as Appendix A). In his decision, the magistrate found that (1) the commission's first stated basis for denial of TTD compensation prior to July 7, 2004, was premised on a mistake of law, as there is no authority for the proposition that compensation for a disability resulting from an additional claim allowance is precluded for any period prior to the date of the commission's adjudication of the additional claim allowance, and (2) the commission's second stated reason for denial of TTD compensation prior to July 7, 2004, is inconsistent with its award of TTD beginning July 7, 2004. Based on these findings, the magistrate recommended that this court issue a writ of mandamus ordering the commission to amend its Staff Hearing Officer's ("SHO") order of September 7, 2005, so that the TTD award begins as of September 6, 2003.

{¶ 3} In its objections to the magistrate's decision, the commission essentially reargues the same points addressed in the magistrate's decision.

{¶ 4} Following an independent review of the matter, we find that the magistrate has properly determined the facts and further find his determination that the commission's first stated basis for denial of TTD compensation was premised on a mistake of law is necessarily dispositive. Therefore, the commission's objections to the magistrate's decision are overruled, and we adopt the magistrate's findings of fact, but modify the magistrate's conclusions of law to the limited extent provided.

{¶ 5} Accordingly, we grant a writ of mandamus ordering the commission to vacate its order of September 7, 2005, and conduct further proceedings to adjudicate relator's request for TTD compensation.

Writ granted.

PETREE and FRENCH, JJ., concur.

APPENDIX A

MAGISTRATE'S DECISION

Rendered on January 31, 2006

{¶ 6} In this original action, relator, Lawrence Whitt, requests a writ of mandamus ordering respondent Industrial Commission of Ohio to amend the start date for its award of temporary total disability ("TTD") compensation.

*Findings of Fact:*

{¶ 7} 1. On November 16, 2000, relator sustained crush injuries to his left foot while employed as a tow motor operator with respondent AMD Fabricators, Inc. ("AMD"), a state-fund employer.

{¶ 8} 2. Relator began receiving TTD compensation from the Ohio Bureau of Workers' Compensation ("bureau").

{¶ 9} 3. Following an April 23, 2003 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation on grounds that the industrial injury had reached maximum medical improvement ("MMI"). At that time, the industrial claim was allowed for "crushing injury left foot; fracture phalanx, 3rd, 4th and 5th toes, compartment syndrome shin graft split thickness, skin graft left thigh; depression; sprain lumbar region."

{¶ 10} 4. Apparently, the DHO's order was not administratively appealed, and the bureau terminated its payments of TTD compensation.

{¶ 11} 5. On September 6, 2003, relator underwent an MRI of the lumbar spine. Upon his review of the MRI images, radiologist Douglas Amson, M.D., reported:

IMPRESSION:

1. L5–S1 small right paramedian herniation impinging epidural fat of right lateral recess and contacting right S1 nerve root.

2. Mild narrowing and dehydration at L2–3.

{¶ 12} 6. On December 7, 2003, treating physician Jerome B. Yokiel, M.D., wrote: "He subsequently underwent an MRI of the lumbar spine on 9/6/03. This did show an L5–S1 disc herniation. * * * I do believe that the disc herniation seen on the MRI examination is secondary to his previous work-related injury."

{¶ 13} 7. On January 23, 2004, Dr. Yokiel wrote:

[H]e did undergo an MRI of the lumbar spine on 9/6/03. This showed an L5–S1 right-sided disc herniation contacting the right S1 nerve root.

I do believe with a degree of medical certainty that this disc herniation is a direct result of his previous trauma and accident of 11/16/00. I also believe that the lumbar disc herniation or 722.10 should be added to his allowable diagnosis for treatment.

{¶ 14} 8. On January 28, 2004, relator was examined by Dr. Yokiel at his office. Dr. Yokiel's office note of January 28, 2004, states:

The patient returns here with continued complaints of left foot pain and also back pain with radiation down the left lower extremity. * * *

* * * On physical examination, the patient is alert and oriented. There is an antalgic gait noted. He has pain with palpation of the lumbosacral region.

There are no para-vertebral spasms at this time. There is increasing pain with range of motion of the lumbosacral spine and increasing pain with straight leg raising on the left at approximately 40 degrees. There is also bony deformity of the left foot and decreased sensation in the left foot, no change from previously.

\* \* \*

\* \* \* [H]e has a previous MRI of the lumbar spine which does show an L5–S1 disc herniation with impingement on the right. The patient has fallen on numerous occasions because of the problem with his foot from the work-related injury. In addition, he has an antalgic gait and does have excessive stress on the lumbar spine secondary to the injury. We would like to obtain an additional allowance for lumbar disc herniation, 722.10, with the Bureau of Workers' Compensation so that we can treat his back as well. \* \* \*

{¶ 15} 9. On February 6, 2004, relator moved for the recognition of "lumbar disc herniation at L5–S1" as an additional claim allowance based upon the September 6, 2003 MRI and the reports of Dr. Yokiel.

{¶ 16} 10. On April 16, 2004, Dr. Yokiel wrote:

This is in regard to Lawrence Whitt who is a patient here at the Centers for Comprehensive Pain Care. He was last seen in the pain management center on 1/28/04. The patient continues to complain of low back pain with radiation down the left lower extremity and left foot pain. He is currently on multiple medications for control of his pain. He does have MRI findings consistent with an L5–S1 disc herniation on the right contacting the right S1 nerve root.

The issue here is the allowance of additional diagnosis of 722.10, lumbar disc herniation, at L5–S1 secondary to the original injury. The mechanism of that disc herniation is postulated as being the fact that the patient had a lumbar strain injury initially and a left foot injury with a severely altered gait which subsequently caused increased stress on the lumbar disc region. He did have a history of degenerative disc disease which is a chronic condition; however, this was aggravated and hastened in its development by the stress put on the spine by his severely altered gait. The patient has intermittent symptoms of radicular pain. This is brought on by certain activities.

\* \* \*

In summary, I believe the patient's pre-existing degenerative disc disease was aggravated by the work-related injury. His subsequent disc herniation is caused by the altered gait from his injury and the increased stress put on the degenerative discs in the lumbar spine. Therefore, his radicular symptoms, which he is presently experiencing, are also secondary to his work-related injury.

{¶ 17} 11. Following a June 4, 2004 hearing, a DHO issued an order denying relator's motion for the additional claim allowance. Relator administratively appealed.

{¶ 18} 12. Following a July 7, 2004 hearing, a staff hearing officer ("SHO") issued an order additionally allowing the claim:

> The Staff Hearing Officer orders that this claim be additionally allowed for LUMBAR DISC HERNIATION L5–S1 based on the 04/18/2004 report of Dr. Yokiel who finds that the injured worker's "subsequent disc herniation is caused by the altered gait from his injury."

(Emphasis sic.)

{¶ 19} 13. Presumably, the SHO's reference to "the 04/18/2004 report of Dr. Yokiel" is actually a reference to the April 16, 2004 report of Dr. Yokiel because there is no April 18, 2004 report from Dr. Yokiel in the record before this court.

{¶ 20} 14. On July 29, 2004, another SHO refused AMD's administrative appeal from the SHO's order of July 7, 2004.

{¶ 21} 15. Earlier, on July 27, 2004, relator returned to Dr. Yokiel's office for further examination. In his office note of July 27, 2004, Dr. Yokiel indicates that relator will be scheduled for lumbar epidural steroid injections.

{¶ 22} 16. On a C–84 dated July 27, 2004, the date of last examination, Dr. Yokiel certifies a period of TTD beginning September 6, 2003 to an estimated return-to-work date of September 28, 2004, based on ICD–9 code 722.10.

{¶ 23} 17. Following a September 29, 2004 hearing, a DHO issued an order awarding TTD compensation:

> The District Hearing Officer awards temporary total disability compensation from 7–7–04 to date and to continue upon submission of medical proof. The District Hearing Officer finds temporary total disability compensation is commenced as of 7–7–04, the date at which the claim was additionally allowed for LUMBAR DISC HERNIATION AT L5–S1 by the Staff Hearing Officer.

(Emphasis sic.)

{¶ 24} 18. Relator administratively appealed the DHO's order of September 29, 2004.

{¶ 25} 19. Following a January 7, 2005 hearing, an SHO issued an order stating that the DHO's order of September 29, 2004, was modified to the extent of the order:

> Temporary total disability compensation remains granted from 07/07/2004, the date the additional allowance of the herniated disc was made, based on the C–84 dated 07/27/2004, from Dr. Yokiel, which is the date of the first medical evidence presented disabling the claimant from work, as a result of the newly

allowed condition. Temporary total disability compensation is awarded from 07/07/2004 to date, and to continue upon submission of medical proof. Staff Hearing Officer notes that, Dr. Yokiel's office records do not support the contention that, the claimant was disabled from work as a result of the herniated disc at L5/S1 before 07/07/2004.

{¶ 26} 20. On February 11, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of January 7, 2005.

{¶ 27} 21. Relator moved for reconsideration of the SHO's order mailed February 11, 2005. On March 25, 2005, the commission itself mailed an order denying the request for reconsideration.

{¶ 28} 22. On July 5, 2005, relator, Lawrence Whitt, filed this mandamus action.

*Conclusions of Law:*

{¶ 29} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 30} Notwithstanding that the commission exclusively relied upon the July 27, 2004 C–84 from Dr. Yokiel certifying TTD compensation beginning September 6, 2003, the date of the MRI, the commission awarded TTD compensation beginning July 7, 2004, the date of the hearing before the SHO who additionally allowed the claim for lumbar disc herniation L5–S1.

{¶ 31} The SHO's order seemingly sets forth two reasons for denying TTD compensation prior to July 7, 2004, and thus rejecting a portion of Dr. Yokiel's certification (1) that TTD compensation is by law automatically precluded prior to the July 7, 2004 hearing date and (2) that Dr. Yokiel's office records do not support TTD prior to July 7, 2004.

{¶ 32} To begin, the commission's second stated reason for denial of compensation prior to July 7, 2004, is inconsistent with its award of TTD beginning July 7, 2004. Neither the office note immediately preceding July 7, 2004, nor the office note immediately following the July 7, 2004 hearing contains an opinion that relator is temporarily totally disabled.

{¶ 33} January 28, 2004, is the date of the office note immediately preceding July 7, 2004. That note does not contain an opinion that relator is unable to return to his former position of employment.

{¶ 34} July 27, 2004, is the date of the office note immediately following the July 7, 2004 hearing. That office note does not contain an opinion that relator is unable to return to his former position of employment.

{¶ 35} Thus, the commission's second stated reason for denial of TTD compensation prior to July 7, 2004, is inconsistent with the stated basis for the award. Under such circumstances, the second stated basis cannot stand.

{¶ 36} The commission's first stated basis for denial of TTD compensation prior to July 7, 2004, is clearly a mistake of law. There is no authority for the proposition that compensation for a disability resulting from an additional claim allowance is precluded for any period prior to the date of the commission's adjudication of the additional claim allowance.

{¶ 37} The commission's adjudication of the additional claim allowance is, not surprisingly, premised upon medical evidence arising prior to the hearing date. Here, the SHO's order of July 7, 2004, that additionally allowed the claim cites exclusively the April 16, 2004 report of Dr. Yokiel, which contains a medical opinion that the lumbar disc herniation at L5–S1 is causally related to the industrial injury. Thus, it would seem to be beyond dispute that compensation can be awarded on the additional claim allowance at least as early as April 16, 2004, the date of the relied-upon medical opinion.

{¶ 38} Here, relator argues that compensation can and should be awarded as early as September 6, 2003, the date of the MRI upon which Dr. Yokiel premised his opinion that the lumbar disc herniation at L5–S1 is causally related to the industrial injury. The magistrate agrees.

{¶ 39} Undeniably, the allowed condition "lumbar disc herniation at L5–S1" existed as early as September 6, 2003, as evidenced by the MRI report. That Dr. Yokiel offered opinions as to the causal relationship of the lumbar disc herniation on dates subsequent to evidence of its existence does not in any way undermine the fact that the condition existed as early as September 6, 2003.

{¶ 40} Under the circumstances here, given the commission's reliance upon Dr. Yokiel's April 16, 2004 report in which the September 6, 2003 MRI is the critical reference to the condition additionally allowed in the claim, September 6, 2003, is the earliest date upon which the commission can award TTD compensation for disability related to the additional claim allowance.

{¶ 41} Given the above analysis, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to amend its SHO's order of September 7, 2005, so that the TTD award begins as of September 6, 2003.

Kenneth W. Macke
Magistrate